**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| | § | **CASE NO. 6:23-CR-123-JCB** |
| | § | |
| **vs.** | § | |
| | § | |
| | § | |
| | § | |
| **ADRIAN CASTRO-DIAZ (1)** | § | |
| **ESTEBAN DE JESUS VILLALOBOS** | § | |
| **RANGEL (2)** | § | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Before the Court are Defendants' Motions to Suppress Evidence (ECF 34 and 35).  United States District Judge J. Campbell Barker referred the motions for a recommendation as to disposition.  The Court conducted a hearing on the motions on April 2, 2024.   For the reasons below, the Court recommends that the motions be **DENIED**.

**PROCEDURAL HISTORY**

On November 15, 2023, a federal grand jury returned an Indictment charging Defendants Adrian Castro-Diaz and Esteban De Jesus Villalobos Rangel with one count each of Conspiracy to Transport Illegal Aliens, in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I).  Defendants filed identical motions to suppress evidence on March 1, 2024.  Defendants argue that Trooper Maldonado stopped the vehicle they were traveling in on May 15, 2022, even though he did not observe any traffic violations and had no reason to believe the occupants of the vehicle had engaged in criminal activity.  Defendants assert that Trooper Maldonado told them the stop was due to a reasonable suspicion, based on his training and experience that R.M. 334 is used for human

1

smuggling to avoid checkpoints, but he did not offer any supporting facts for that conclusion. Defendants acknowledge that, following the stop, Trooper Maldonado viewed several passengers crouched down in the vehicle and later learned that four men in the vehicle were not U.S. citizens. They argue, however, that Trooper Maldonado did not have a particularized or objective basis for suspecting that they were engaged in criminal activity sufficient to support the stop and that all evidence obtained following the stop must be suppressed.

The Government filed a response asserting that Trooper Maldonado properly drew rational inferences from the vehicle type, the vehicle location, his experience with R.M. 334, and his knowledge gleaned from his training and experience that this route is used to dodge border patrol checkpoints. The Government submits that the stop properly resulted from a reasonable suspicion that the vehicle's occupants were engaged in illegal activity. More specifically, the Government states that the vehicle was stopped within 30 miles of the border, late at night, on a remote road primarily used by ranchers and hunters that is also known to be used by undocumented persons and smugglers to avoid checkpoints. The vehicle was observed traveling on the road at a time not customary for ranchers and the vehicle, a Honda CR-V, is not a vehicle typically used by ranchers. The Government asserts that Trooper Maldonado has extensive experience with human smuggling interdictions in the area. When he ran the license plate, it was registered in Smith County, which is not a normal endpoint for travel on R.M. 334. As a result, the Government argues that Trooper Maldonado had a reasonable suspicion that the vehicle was simply using R.M. 334 to evade permanent checkpoints set up on adjacent roadways.

The Court conducted a hearing on the motions. At the hearing, Trooper Maldonado testified that he was a Trooper with the Texas Department of Public Safety, assigned to Operation Lone Star, on the night of the stop. At that time, he had been a Trooper for approximately ten

months.  He had experience on a DPS brush team interdicting illegal immigrant and human smuggling activities.  Trooper Maldonado testified that he observed a Honda CR-V traveling from U.S. Highway 90 to R.M. 334 late at night.  He stated that he followed the vehicle for at least five minutes.  Trooper Maldonado explained that the vehicle was riding low or sagging in the back, it was 33 miles or less from the border, and it was not the type of vehicle typically seen being driven by ranchers or hunters on R.M. 334.  Trooper Maldonado opined that Jeeps and trucks are more common vehicles on that road.  He also noted that ranchers are not typically traveling on that road between 11 p.m. and 12 a.m.  Prior to initiating the stop, Trooper Maldonado stated that he ran the license plate and learned that the car was registered in Tyler, Smith County, Texas.  He stated that R.M. 334 does not offer a direct path to travel to Tyler.  He also stated that, in his experience, R.M. 334 is used by individuals seeking to avoid a border checkpoint on U.S. Highway 90.  Trooper Maldonado testified that he decided to initiate a stop when he did because it would be more difficult to obtain backup further down the road.

Another Trooper, Cade Young, was stopped on R.M. 334 when Defendants' vehicle and Trooper Maldonado passed by him, and he pulled out behind Trooper Maldonado.  Trooper Maldonado testified that he initiated the stop and Defendants' vehicle pulled over without incident.  During testimony by Trooper Maldonado, the Government offered Trooper Maldonado's body camera footage into evidence and displayed portions of the video.  The video begins while Trooper Maldonado is stopping the vehicle.  After stopping the vehicle, Trooper Maldonado and Trooper Young approached the vehicle together.  Trooper Maldonado commented to Trooper Young that the vehicle was riding low and Trooper Young stated that he used his alley lights to illuminate the vehicle when it passed him, revealing multiple occupants in the car.  Trooper Maldonado stated that he approached the vehicle and asked Defendants their names and where they were headed.

He also tried to identify the other occupants in the vehicle. Trooper Maldonado explained that he stated to Defendants that the stop was for "reasonable suspicion," without elaborating on the specific reasons for the suspicion, because that is a de-escalation technique used by law enforcement. Trooper Maldonado contacted U.S. Border Patrol. U.S. Border Patrol arrived on scene and determined that four occupants in the vehicle were undocumented. Trooper Maldonado then arrested Defendants on a state charge of smuggling of persons.

### DISCUSSION AND ANALYSIS

Generally, in a suppression hearing, the burden of production and persuasion rests with the movant. *United States v. De La Fuente*, 548 F.2d 528, 533 (5th Cir.), *cert. denied*, 431 U.S. 932, 97 S.Ct. 2640 (1977), and *cert. denied*, 434 U.S. 954, 98 S.Ct. 479 (1977). For an initial stop without a warrant, however, the burden is on the government to show reasonable suspicion. *United States v. Jaquez*, 421 F.3d 338, 340-41 (5th Cir.2005). The government must show a "minimum level of objective justification for the officer's actions, measured in light of the totality of the circumstances." *United States v. Tellez*, 11 F.3d 530, 532 (5th Cir.1993).

"The stopping of a vehicle and detention of its occupants constitutes a 'seizure' under the Fourth Amendment." *U.S. v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004) (en banc). When a police officer stops a vehicle and questions its occupants, there is a modest intrusion of that person's liberty. *U.S. v. Brignoni-Ponce*, 422 U.S. 873, 880, 95 S.Ct. 2574, 2579 (1975). To justify that limited intrusion, a police officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880 (1968). Under the *Terry* framework, a law enforcement officer "may, consistent with the Fourth Amendment, conduct a brief investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *U.S.*

*v. Jordan*, 232 F.3d 447, 448 (5th Cir. 2000).  When determining whether a *Terry* stop is supported by reasonable suspicion, a court looks at "whether the officer's action was: (1) 'justified at its inception'; and (2) 'reasonably related in scope to the circumstances which justified the interference in the first place.' " *U.S. v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005) (quoting *Terry v. Ohio*, 392 U.S. at 20, 88 S.Ct. at 1879).

In *Brignoni-Ponce*, the Supreme Court considered "whether a roving patrol [as opposed to a checkpoint stop] may stop a vehicle in an area near the border and question its occupants when the only ground for suspicion is that the occupants appear to be of Mexican ancestry."  *U.S. v. Brignoni-Ponce*, 422 U.S. at 876, 95 S.Ct. at 2578.  The Government argued that warrantless stops in border areas were authorized by 8 U.S.C. § 1357(a)(1), which authorizes an INS officer or employee "to interrogate any alien or person believed to be an alien as to his right to be or to remain in the United States." *Id*. at 877.  The Court rejected the argument, however, that a border patrol agent has broad and unlimited discretion to stop vehicles without meeting the reasonable suspicion requirement of the Fourth Amendment, as articulated in *Terry*. *Id*. at 882.  As such, the Court evaluated whether the stop—in that case, effected by border patrol agents—was supported by a reasonable, articulable suspicion of criminal activity.  In comparing a stop near the border with other investigatory stops, the Court stated:

> In this case as well, because of the importance of the governmental interest at stake, the minimal intrusion of a brief stop, and the absence of practical alternatives for policing the border, we hold that when an officer's observations lead him reasonably to suspect that a particular vehicle may contain aliens who are illegally in the country, he may stop the car briefly and investigate the circumstances that provoke suspicion.  As in Terry, the stop and inquiry must be 'reasonably related in scope to the justification for their initiation.'  The officer may question the driver and passengers about their citizenship and immigration status, and he may ask them to explain suspicious circumstances, but any further detention or search must be based on consent or probable cause.  We are unwilling to let the Border Patrol dispense entirely with the requirement that officers must have a reasonable suspicion to justify roving-patrol stops.  In the context of border area stops, the

reasonableness requirement of the Fourth Amendment demands something more than the broad and unlimited discretion sought by the Government.

*Id*. at 881–882 (citation omitted). The Court identified eight predominant factors that may result in reasonable suspicion sufficient to stop a vehicle in a border area: (1) the area's proximity to the border; (2) the characteristics of the area; (3) usual traffic patterns; (4) the agents' experience in detecting illegal activity; (5) the driver's behavior; (6) the aspects or characteristics of the vehicle; (7) information about recent illegal trafficking of aliens or narcotics in the area; and (8) the number of passengers and their appearance and behavior. *United States v. Brignoni-Ponce*, 422 U.S. at 884–885.

At the hearing, Defendants argued that the factors espoused in *Brignoni-Ponce* do not apply because Trooper Maldonado was acting as a Texas law enforcement officer and was not acting under the authority of 8 U.S.C. § 1357. Defendants' argument misconstrues the Court's holding. The Court expressly determined that officers acting under the authority of 8 U.S.C. § 1357, such as border patrol agents on roving-patrol, do not have broader powers than other law enforcement officers, such as a State Trooper, to conduct investigatory stops. Instead, the Court applied the *Terry* framework and identified relevant factors that may support reasonable suspicion of criminal activity in a border area. The Court specifically limited officers on roving patrol to stops when "they are aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the vehicles contain aliens who may be illegally in the country." *Id*. at 884. The Court did not present a different standard to be applied to border patrol agents or other officers who are authorized to perform border operations by federal law. On the contrary, the Court explained that the same standard applicable to all law enforcement officers applies when those agents conduct stops while on roving patrol, as opposed to when they are conducting an authorized border checkpoint stop.

Here, Trooper Maldonado observed a small utility vehicle traveling on a remote ranch-to-market road at 11:50 p.m. He saw that the vehicle was weighed down and was within approximately 30 miles of the border. He ran the license plate and discovered that the car was registered in Tyler, Smith County, Texas, as opposed to the area where the car was traveling. Trooper Maldonado deduced that R.M. 334 does not provide a direct route for travel to Tyler and that a small utility vehicle is not typical for a rancher or a hunter that might be using that road. Although he had only been on the job for approximately 10 months at the time of the stop, Trooper Maldonado testified that he had experience performing hundreds of interdictions in the area and that R.M. 334, in his experience, is used by undocumented persons and smugglers to avoid border checkpoints.

A vehicle's close proximity to the border—within 50 miles—is a paramount factor in determining reasonable suspicion. *U.S. v. Orozco*, 191 F.3d 578, 581 (5th Cir. 1999). A vehicle's registration showing that the vehicle is taking an indirect route on a less-heavily patrolled road and a road's "reputation as a route commonly used for transporting illegal aliens" may add to reasonable suspicion. *U.S. v. Olivares-Pacheco*, 633 F.3d 399, 404 (5th Cir. 2011). R.M. 334 is "a remote road used primarily by ranchers and hunters in trucks or jeeps," it is the site of many Border Patrol interceptions of vehicles transporting undocumented persons, and it is known "as a convenient route used by smugglers and undocumented persons for purposes of bypassing a permanent federal checkpoint on U.S. Highway 90 near Cline, Texas." *U.S. Cardona*, 955 F.2d 976, 978 (5th Cir. 1992). The fact that a vehicle is riding low also contributes to reasonable suspicion. *U.S. v. Guerrero-Barajas*, 240 F.3d 428, 433 (5th Cir. 2001).

Viewing the evidence presented and the totality of the circumstances, Trooper Maldonado was aware of and identified specific and articulable facts leading him to suspect that the occupants of the vehicle were involved in the illegal activity of transporting illegal aliens when he initiated the stop of Defendants' vehicle.  The Government has shown that Trooper Maldonado had a reasonable, articulable suspicion that criminal activity was afoot, sufficient to warrant a brief investigatory stop, when the stop was initiated.

## **RECOMMENDATION**

In light of the foregoing, it is recommended that Defendants' Motions to Suppress Evidence (ECF 34 and 35) be **DENIED**.

Within fourteen days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge.  28 U.S.C. § 636(b).  Written objections shall not exceed eight pages.  Local Rule CV-72(c).

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted and adopted by the district court.  *Douglass v. United Servs. Auto. Assn*., 79 F.3d 1415, 1430 (5th Cir.1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

So ORDERED and SIGNED this 19th day of April, 2024.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE