UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS

No. 6:23-cr-00123

**United States of America**

v.

**Adrian Castro-Diaz and
Esteban De Jesus Villalobos Rangel**

# ORDER

In this criminal action, defendants filed motions to suppress evidence. Docs. 34, 35. The magistrate judge conducted a hearing on the motions and issued a report recommending that the motions be denied. Doc. 43. Defendants filed written objections. Docs. 50, 51. The government responded to the objections. Doc. 52. The court reviews objected-to portions of the magistrate judge's report and recommendation de novo. *See* 28 U.S.C. § 636(b)(1).

Defendants are charged in an indictment with one count each of conspiracy to transport illegal aliens, in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I). Doc. 1 at 1. The magistrate judge's report finds that the Texas Department of Public Safety officer who initiated the traffic stop resulting in these charges, Trooper Israel Maldonado, was aware of and identified specific and articulable facts leading him to suspect that the occupants of the vehicle were involved in the illegal activity of transporting illegal aliens. Doc. 43 at 7. Further, the report concludes that Trooper Maldonado had a reasonable, articulable suspicion that criminal activity was afoot, sufficient to warrant a brief investigatory stop, when the stop was initiated. *Id.* at 8.

Defendants' objections argue that the *Terry*-stop test applies to investigative stops made by local law enforcement and that the factors outlined in *U.S. v. Brignoni-Ponce* apply only to stops made by roving border patrol agents. 422 U.S. 873 (1975). As a result, defendants contend that the *Brignoni-Ponce* factors do not apply

to Trooper Maldonado's stop, which consequently lacked a reasonable suspicion of illegal activity.

In support of this argument, defendants rely on two statements from the Fifth Circuit. *See U.S. v. Hernandez-Moya*, 353 F. App'x 930, 934 (5th Cir. 2009) (unpublished) ("*Terry* analysis applies to investigative stops made by local police officers, while *Brignoni-Ponce* applies to stops by roving border agents."); *United States v. Brown*, 209 F. App'x 450, 454 (5th Cir. 2006) (unpublished) ("The test set forth in *Brignoni-Ponce* does not apply in non-border patrol cases . . . ."). However, the latter pronouncement in *Brown* is unpublished and thus not binding as precedent. *See* 5th Cir. R. 47.5.4.

Furthermore, *Hernandez-Moya* is distinguishable because it analyzed the *Brigoni-Ponce* factors only in the context of the defendant's argument that applying *Terry* to white vehicle occupants and *Brignoni-Ponce* to Hispanic occupants violated Equal Protection. The Fifth Circuit concluded that, because the application of *Terry* or *Brigoni-Ponce* turned on "the type of law enforcement officers and the nature of the stop" and not race or ethnicity, the Equal Protection Clause was not violated. *Hernandez-Moya*, 353 F. App'x at 934. But stating that *Brignoni-Ponce* generally applies to roving border patrol agents is different from holding that *Brignoni-Ponce* does not apply to stops by roving law enforcement officers, and, therefore, defendants' objections are misguided. In short, the Fifth Circuit has not clearly decided whether reasonable suspicion for immigration-related investigative stops by local police should be analyzed under the *Brignoni-Ponce* factors.

As the magistrate judge explained in the report, the Supreme Court's holding in *Brignoni-Ponce* does not create a different standard for investigatory stops by border patrol agents. Instead, the Court expressly applied the standard articulated in *Terry v. Ohio*, 392 U.S. 1 (1968), to stops initiated by roving border patrol agents. *Brignoni-Ponce*, 442 U.S. at 881–82. *Terry* requires that a law enforcement officer making a traffic stop "be able to point to

specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." 392 U.S. at 21. Under this test, a brief investigatory stop is warranted when "the officer has a reasonable, articulable suspicion that criminal activity is afoot." *U.S. v. Jordan*, 232 F.3d 447, 448 (5th Cir. 2000).

After finding that *Terry* applies equally to stops by border patrol agents and other law enforcement officers, the *Brignoni-Ponce* Court identified seven predominant factors that are relevant in the reasonable suspicion analysis when an investigatory stop based on suspicion of illegal immigration activity is effected in close proximity to the border: (1) the area's proximity to the border; (2) usual traffic patterns; (3) the officer's experience in detecting alien traffic; (4) the driver's behavior; (5) the aspects or characteristics of the vehicle; (6) information about recent illegal trafficking of aliens or narcotics in the area; and (7) the number of passengers and their appearance and behavior. *Brignoni-Ponce*, 442 U.S. at 884–85. Importantly, the Court clarified that these factors are relevant to a reasonable suspicion that a vehicle in a border area "contain[s] aliens who may be illegally in the country." *Id.* at 884.

Here, as part of Operation Lonestar, Trooper Maldonado was stationed "near the border . . . looking for illegal immigration." Doc. 45 at 19. Prior to the stop at issue in this case, he had been involved in hundreds of stops related to illegal immigration. *Id.* At a hearing before the magistrate judge, Trooper Maldonado also articulated specific facts, detailed below, that led him to stop defendants' vehicle on suspicion of human smuggling, a federal immigration offense. *Id.* at 21. Because of the immigration-related nature of the stop, the *Brignoni-Ponce* factors are relevant to a determination of the *Terry* reasonable suspicion standard. *See Gonzales v. City of Peoria*, 722 F.2d 468, 477 (9th Cir. 1983) (holding that "nothing in federal law precluded [local] police from enforcing the criminal provisions of the Immigration and Naturalization

Act"), overruled on other grounds in *Hodgers-Durgin v. de la Vina*, 199 F. 3d 1037 (9th Cir. 1999).

Defendants' vehicle was a small utility vehicle in close proximity to the border late at night, on Farm to Market Route (F.M.) 334, a remote road primarily used by ranchers and hunters driving trucks or jeeps, that is known "as a convenient route used by smugglers of undocumented persons for purposes of bypassing a permanent federal checkpoint on U.S. Highway 90 near Cline, Texas." *U.S. v. Cardona*, 955 F.2d 976, 978 (5th Cir. 1992); *see also* Doc. 45 at 13. Prior to initiating the stop, Trooper Maldonado observed that the vehicle was weighed down. He also deduced that the vehicle was taking an indirect route when a license plate check revealed that the vehicle was registered in Smith County, Texas. Observing a vehicle riding low contributes to reasonable suspicion. *U.S. v. Guerrero-Barajas*, 240 F.3d 428, 433 (5th Cir. 2001). Similarly, a law enforcement officer may properly consider the fact that the vehicle is taking an indirect route in close proximity to the border on a less-heavily patrolled road with a reputation as a smuggling route. *U.S. v. Olivares-Pacheco*, 633 F.3d 399, 404 (5th Cir. 2011).

As articulated by the Supreme Court, these are all factors that support a reasonable suspicion of human smuggling. *See Brignoni-Ponce*, 422 U.S. at 884–85. Thus, in compliance with *Terry*, Trooper Maldonado identified specific and articulable facts sufficient to establish a reasonable suspicion that, at the time of the stop, the occupants of the vehicle were involved in the illegal activity of smuggling aliens.

Having reviewed the magistrate judge's report de novo, and being satisfied that it contains no error, the court overrules defendants' objections and accepts the report's findings and recommendation. The court denies the motions to suppress evidence. Docs. 34, 35.

- 5 -

*So ordered by the court on September 11, 2024.*

_____
J. C<small>AMPBELL</small> B<small>ARKER</small>
United States District Judge